FILED

2020 Oct-09  PM 02:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

DOUGLAS C. MARTINSON, II AS        )
ADMINISTRATOR OF THE ESTATE   )
OF KRISTIE RENEE HOOD, et al.,        )
                                                            )
                                                            )     Case No.:  5:18-cv-1467-LCB
           Plaintiffs,                               )
                                                            )
v.                                                        )
                                                            )
CRETE CARRIER CORPORATION,
A NEBRASKA CORPORATION, et
al.,

           Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This case arises out of a motor vehicle accident involving an 18-wheeler tractor-trailer that claimed the lives of Justin Dwayne Clark Williams, Billy Adam Cox, and Kristie Renee Hood.   The plaintiffs are the administrators of the decedents' estates and have brought claims of wantonness (Count I), negligence (Count II), and negligent entrustment, hiring and training (Count III) against the driver of the 18-wheeler, Luis Alfonso Castilleja, and Crete Carrier Corporation ("Crete").   Pending before the Court is the defendants' motion for summary judgment.  (Doc. 34).  In their response to the defendants' motion for summary judgment, the plaintiffs concede Count III.  (Doc. 50, p. 18 n. 12).  Accordingly,

Count III will be dismissed.  Otherwise, the motion is fully briefed and is ripe for review.

## I.  Jurisdiction and Venue

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States."  The plaintiffs are the administrators of the decedents' estates.  28 U.S.C. § 1332(c)(2) provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent…."  The decedents were all residents of Alabama.  Luis Castilleja is a resident of California, and Crete is a corporation with its principal place of business in Nebraska.  *See* 28 U.S.C. 1332(c)(1)("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business….").  The amount in controversy exceeds $75,000.

The accident that is the basis for this suit occurred in Jackson County, Alabama, which is within the Northeastern Division of the Northern District of Alabama.  Thus, venue is proper in this Court.  *See* 28 U.S.C. § 1391(b)(2)("A

civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.")

## II. Background

### a. The accident

On September 27, 2017, the decedents were travelling in the westbound lane of Highway 72 between Scottsboro, Alabama and Huntsville, Alabama when they collided with the rear portion of the 18-wheeler being operated by Castilleja.  The car was owned by Hood but was being driven by Williams.  Cox was a passenger. All three occupants of the car died within minutes of the crash, but Castilleja was not injured.  It is undisputed that the truck was completely stopped in the far-right lane of the highway when the crash occurred.  Although the parties dispute the precise reason that Castilleja's truck was stopped, the defendants concede that it was stopped on the right of way as opposed to the shoulder of the road.  There were no traffic lights or stop signs on that particular stretch of road.

Castilleja testified that, as he was driving along Highway 72, he noticed a motor home in front of him that was driving erratically and beginning to slow down.  Castilleja stated that he was unable to pass the motor home because of traffic.  As the motor home began to slow down, Castilleja began to apply his brakes.  He also stated that his truck was equipped with a safety feature called OnGuard that would automatically slow the truck down if it got too close to

another vehicle.   According to Castilleja, the motor home eventually stopped, causing him to have to stop as well.  Castilleja testified that after his truck stopped, the motor home drove away.   However, he was unable to make his truck move again.   The parties are not in complete agreement as to exactly why the truck became immobilized, but there is evidence suggesting that there was a problem with the truck's air-braking system.   That problem triggered a safety feature that prevented the truck from moving.

As will be discussed in greater detail below, there are disputes as to the order and timing of the events that happened after Castilleja's truck stopped.   However, the parties agree that Castilleja did not place any warning devices, such as reflective triangles or cones, behind his truck to warn oncoming traffic prior to the crash.   According to Castilleja, his truck stopped at approximately 3:27 p.m. just before he made a notation on his computer that he was off duty.   (Doc. 35-2, Castilleja Depo. p. 264-65).  Jackson County 911 received a call from Castilleja at 3:37 p.m. in which he informed them that his truck was stopped on the right of way and requested assistance.

Castilleja asserted that before calling 911, he attempted to rev his engine for five to seven minutes in order restore air pressure to the brakes and move the truck off the road.  *Id.* at 327.  When that was not successful, Castilleja testified that he exited his truck and walked around to the back of the trailer to listen for air leaks.

*Id.* at 328-29. He then examined the engine compartment, and determined that there was a severe air leak that could not be repaired immediately. *Id.* at 332. According to Castilleja, that process took approximately three minutes. Castilleja stated that he then placed the 911 call, retrieved his reflective triangles from behind the driver's seat, and began to go and put them on the road. However, the crash occurred before he was able to place any of the triangles.

Melissa Lewis, an eyewitness, called 911 at 3:42 p.m. to report the accident she had just seen. According to Lewis, she was travelling in the opposite direction on Highway 72 at the time of the accident. Lewis testified that she saw an 18-wheeler stopped on the far side of the westbound lane with a man standing beside it. In a statement that she gave shortly after the accident, Lewis stated that the man had reflective triangles in his hand. However, at her deposition, she stated that although she saw something reflective, she could not say with certainty whether the man was carrying triangles. According to Lewis, the truck's hazard lights were not on, and there were no reflective triangles or other warning devices behind the truck. Lewis stated that she next saw a black car coming up behind the truck and that the car swerved into the truck and "went up under [it]." (Doc. 35-1, Lewis Depo. p. 12). Although Lewis did not discount the possibility that a motor home could have been in front of Castilleja's truck, she testified that she did not remember seeing one. *Id.* at 21.

Another eyewitness, Raymond Baker, testified that he was sitting on his daughter's front porch watching traffic go by when the accident occurred. Baker stated that the porch was about 150 yards from the highway. (Doc. 51-13, Baker Depo. p. 28). Baker testified that he saw Castilleja's truck begin to slow down and eventually stop. *Id.* at 12. However, Baker stated that there was no motor home in front of the truck. *Id.* at 22. According to Baker, Castilleja did not exit his truck until after the accident occurred. Baker stated that approximately 20 minutes passed between the time Castilleja's truck stopped and when the crash occurred. When asked whether the truck's hazard lights were on, Baker stated that he only saw one of them blinking on the "back of the trailer on the left side." *Id.*

Baker was also able to recount the order of events leading up to the crash. According to Baker, Castilleja's truck was stopped in the right lane, and a "white box truck" was approaching it in the left lane. *Id.* at 12. The decedents' vehicle was also travelling in the left lane just behind the box truck. Shortly before the vehicles reached Castilleja's truck, another vehicle that had been travelling in the right lane, swerved in front of the box truck in order to avoid Castilleja's truck. *Id.* at 12-13. That caused the box truck to brake which caused the decedent's vehicle to swerve into the right lane and crash into Castilleja's truck. *Id.* The defendants claim that Baker's version of the events is inconsistent with the findings of the accident reconstructionist.

The Court notes that Lewis's testimony that the decedents' car swerved to the left would be consistent with Baker's testimony because they were viewing the events from opposite vantage points.  However, Lewis testified that she did not see a white box truck.

### b.  Events before the accident

The defendants do not dispute that, on September 23, 2017, four days before the accident, Castilleja was in Missouri when he had an air leak in his truck related to the braking system.  He immediately took the truck to a mechanic who was able to perform a temporary repair.  The invoice from that mechanic had the following "tech notes": "Checked air leak[.] Had to make a new line from air compressor to air dryer[.] Did not have the correct fittings[.] Had to use extra hose and [two] 90-degree fittings and told the driver to replace as soon as possible.  He did  not want a part run to get the correct fitting."  (Doc. 51-4, p. 2-3).  Castilleja then drove 1,972 miles before the crash.  (Doc. 35-9).  It is undisputed that Castilleja had no additional problems with his truck until just before the accident.

### c.  Toxicology reports

The plaintiffs do not dispute that a toxicology report performed on Williams, the driver of the car, revealed a blood alcohol level of 0.068 g/100 mL.  The toxicology screen also revealed the presence of THC and methamphetamine.  However, the plaintiffs argue that those results are not reliable for various reasons

that will be discussed below, and they dispute that Williams was impaired at the time of the accident. There is no dispute that Castilleja tested negative for alcohol or any other controlled substances.

## III.   The Defendants' Motion for Summary Judgment

The defendants have moved for summary judgment on all counts. According to the defendants, there are no disputed material facts as to whether Castilleja was wanton in his operation of the truck or in its maintenance. Further, the defendants argue that Castilleja was not negligent for various reasons, that Williams's alleged impairment was the proximate cause of the accident, and that Williams's alleged intoxication was an intervening efficient cause of the accident. The defendants also claim that Williams and Hood were contributorily negligent. Finally, the defendants contend that neither Castilleja nor Crete had notice that there was a defect with the braking system.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden

of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla.

1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## B. Discussion

As noted, the defendants have moved for summary judgment on all counts.  The Court will address each in turn.

### 1. Wantonness

To prevail on a wantonness claim in Alabama[1], a plaintiff must provide substantial evidence that the defendant engaged in "willful or wanton misconduct." Ala. Code § 32-1-2.  Wantonness requires "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9-10 (Ala. 2007).  A plaintiff does not need to show that "the actor kn[ew] that a person [wa]s within the zone made dangerous by his conduct" or that the actor "entertained a specific design or intent to injure the plaintiff" to prove wantonness.  *Id*.  Rather, a plaintiff need only show that "the actor is 'conscious' that injury will likely or probably result from his actions."  *Id*.

---

[1] "A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits.  In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed."  *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 (11th Cir. 2009), *citing Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287, 292 (Ala.2007).  The parties do not dispute that the contract was formed in Alabama.

Demonstrating this consciousness of injury requires a plaintiff to overcome a rebuttable presumption of the defendant's instincts for self-preservation. *Id*. at 12. In the context of an automobile accident, this entails showing that the defendant was either so dispossessed of his "normal faculties, such as from voluntary intoxication [that he was] indifferent to the risk of injury to himself" or that his act was "so inherently reckless" that he showed "depravity consistent with disregard of instincts of safety and self-preservation." *Id*. Put simply, a wantonness determination is wholly fact dependent. *Central Alabama Electric Cooperative v. Tapley*, 546 So. 2d 371 (Ala. 1989).

As a fact-dependent inquiry, wantonness is a question for the jury, and a court may grant summary judgment only when "there is a total lack of evidence from which the jury can reasonably infer wantonness." *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992). Alabama courts have denied summary judgment when "fairminded persons in the exercise of impartial judgment could reach different conclusions as to the existence of wantonness." *Berry v. Fife*, 590 So. 2d 884, 887 (Ala. 1991). Denial is proper where either a jury could reach different conclusions on whether the undisputed facts constitute wantonness or there is a material dispute regarding whether the driver engaged in wanton behavior.

The plaintiffs alleged that Castilleja acted wantonly when he failed to timely place reflective triangles behind his truck and when he decided to drive his truck

after the temporary repair was performed in Missouri as opposed to waiting for the proper part.  According to the defendants, Castilleja did not act wantonly at the scene of the accident because, by calling 911 and first attempting to move his vehicle onto the side of the road, he was trying to ensure the safety of other drivers.

However, the Court must evaluate all of the facts in the light most favorable to the nonmoving party.  As noted, there is a dispute as to whether Castilleja ever got out of his truck before the crash occurred.  Castilleja stated that he got out, examined the rear of the trailer and the engine compartment, called 911, and then retrieved his reflective triangles all in a window of approximately ten minutes. However, Raymond Baker testified that Castilleja never exited his truck and sat idle in the road for approximately 20 minutes.  There is also a dispute as to whether the truck's hazard lights were turned on.  Thus, when viewed in the light most favorable to the plaintiffs, a reasonable jury could conclude that Castilleja did not act to ensure the safety of other drivers and instead, sat idle in his truck in the right lane of a busy highway with no reflective devices placed and no hazard lights activated.  There is evidence in the record indicating that Castilleja had been trained on the importance of quickly placing reflective devices behind his vehicle in situations like the present one.  Accordingly, viewing the evidence in the light most favorable to the plaintiffs, a jury could conclude that Castilleja's conscious

omission to place the reflective triangles for 20 minutes constituted wanton behavior.

As to whether Castilleja's decision to drive his truck with the temporary repair constituted wantonness, the Court reaches a different conclusion. In *Ex parte Essary*, 992 So. 2d 5, 12 (Ala. 2007), the Alabama Supreme Court discussed a presumption that exists in wantonness cases such as this. Essentially, that court held that there is a rebuttable presumption against a finding of wantonness in cases where the challenged behavior is as real of a danger to the defendant as it would be to any plaintiff. The Court held:

> Indeed, the risk of injury to Essary himself was as real as any risk of injury to the plaintiffs. Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior. *See Griffin Lumber Co. v. Harper*, 252 Ala. 93, 95, 39 So.2d 399, 401 (1949) ("There is a rebuttable presumption recognized by the law that every person in possession of his normal faculties in a situation known to be dangerous to himself, will give heed to instincts of safety and self-preservation to exercise ordinary care for his own personal protection. It is founded on a law of nature and has [as] its motive the fear of pain or death. *Atlantic Coast Line R. Co. v. Wetherington*, 245 Ala. 313(9), 16 So.2d 720 [ (1944) ].").

As the motion for summary judgment relates to Castilleja's decision to drive his truck with the temporary repair, the Court finds that the plaintiffs have pointed to no evidence that would rebut the presumption discussed in *Essary*. Driving an 18-wheeler, or any vehicle for that matter, with faulty brakes would be just as dangerous to Castilleja as it would to anyone else. There is no evidence that

Castilleja was impaired when he made that decision or at any other time.  Thus, the Court finds that summary judgment is proper insofar as the plaintiffs attempt to show wantonness through Castilleja's decision to drive his truck with the temporary fittings.

However, the Court notes that this presumption *would* be rebutted insofar as it relates to Castilleja's decision to delay placing the reflective triangles behind his truck.  As noted, the evidence when viewed in the light most favorable to the plaintiffs would show that Castilleja remained in the cab of his truck until the crash occurred.  The evidence shows that the truck was pulling a 53-foot trailer and thus, a jury could find that any rear-end collision would not be as dangerous to Castilleja as it would to other motorists in smaller vehicles.  Indeed, Castilleja suffered no injuries in this case.  Accordingly, summary judgment is due to be denied insofar as it challenges a finding of wantonness on this basis.

### 2. Negligence

The plaintiffs next allege that the defendants were negligent for the same reasons.  To succeed on a negligence claim, a plaintiff must establish the existence of (1) a duty; (2) a breach of that duty; (3) proximate causation; and (4) an injury. *Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1248 (Ala. 2014).  In their motion for summary judgment, the defendants first contend that summary judgment is proper because, they say, Castilleja was responding to a sudden emergency.  The

defendants also argue that Castilleja was not negligent because, they say, he began the process of putting out his triangles in a timely manner.   Additionally, the plaintiffs claim that Williams's alleged impairment was the proximate cause of the accident as well as an intervening efficient cause, and that Williams and Hood were contributorily negligent because of their alleged impairment.

### a.  Sudden Emergency

"'In order for the sudden emergency doctrine to be applicable, there must be 1) a sudden emergency; and 2) the sudden emergency must not be the fault of the one seeking to invoke the rule.'" *Waters v. Williams*, 821 So. 2d 1000, 1007 (Ala. Civ. App. 2001), *quoting Friedlander v. Hall*, 514 So. 2d 914, 915 (Ala.1987). Under Alabama law, in negligence cases, the sudden emergency doctrine may lower a defendant's standard of care. *Bettis v. Thornton*, 662 So. 2d 256, 257 (Ala. 1995).  In *Bettis*, the Alabama Supreme Court characterized a sudden emergency as one "calling for quick action…."  Generally, a jury must determine whether a sudden emergency caused an accident.  *Friedlander v. Hall*, 514 So. 2d 914, 915 (Ala. 1987)(*citing Rollins v. Handley*, 403 So. 2d 914, 917 (Ala. Civ. App. 1980)). A court may resolve the issue as a matter of law when the record does not contain "substantial evidence of disputed material facts upon which a fact-finder could base a determination that a sudden emergency existed…." *Whitaker v. Coca-Cola Co. USA*, 812 So. 2d 1252, 1258 (Ala. Civ. App. 2001).

According to the defendants, Castilleja was reacting to a sudden emergency when he slowed and ultimately stopped his truck because of the motor home that he said was driving erratically in front of him.  The Court first notes that there is a dispute as to whether there was actually a motor home in front of Castilleja.  However, even assuming that there was, Castilleja's own testimony belies the contention that the motor home created a sudden emergency.  In his deposition, Castilleja testified that he began to apply his brakes approximately a quarter of a mile from the motor home and was able to come to a complete stop.  (Castilleja Depo. p. 256-7).  Castilleja testified that the process of slowing down took approximately 15 seconds.  *Id*. at 254.  Given this conflicting evidence, the Court finds that it would be more appropriate for a jury to resolve whether Castilleja was responding to a sudden emergency.  Thus, summary judgment would not be proper on that basis and is due to be denied.

### b.  Williams's alleged impairment

The defendants next argue that summary judgment is proper because, they say, Williams's impairment was the proximate cause of the accident and was also an intervening efficient cause.  Williams's impairment is also the basis for the defendants' contributory negligence argument.  In order for summary judgment to be proper under any of these theories, the defendants would have to show that there is no genuine dispute as to whether Williams was impaired at the time of the

accident.  However, the plaintiffs have pointed to evidence indicating that although the toxicology screen did show that Williams had alcohol in his system, he was below the legal limit to operate a motor vehicle.  Additionally, the plaintiffs note that although Williams tested positive for other drugs, there is expert testimony indicating that he may not have been impaired.

The plaintiffs first note that there is a dispute as to the accuracy of the toxicology results based on the method used to collect Williams's blood.  The plaintiffs also pointed to the testimony of Chip Walls, a forensic toxicologist, who testified that it is difficult to infer impairment from toxicology numbers alone without drug use information, the dose and duration of use, and the route of administration.  As to THC, Wells stated that it can be detected long after the psychomotor impairment effects have dissipated.  (Doc. 51-15, Wells Depo. p. 121, 275-76).  While the Court notes that this is a close issue, it must view the evidence in the light most favorable to the nonmoving party.  When so viewed, a reasonable jury could conclude that Williams was not impaired at the time of the crash.

The defendants also cite to *Carroll v. Deaton, Inc.,* 555 So. 2d 140 (Ala. 1989), in support of their argument that Williams's intoxication was the proximate cause of the accident.  In *Carroll*, the plaintiffs argued that a truck driver was negligent because he parked his trailer without turning on his head lamps or

taillights as required by law. The Alabama Supreme Court determined that the plaintiff driver committed *per se* negligence because he was driving under the influence with a blood alcohol level over the legal limit. However, that case is distinguishable for two reasons. First, assuming the accuracy of the toxicology report, Williams was under the legal limit. Second, the plaintiff driver in *Carroll* swerved off the road and hit a truck that was parked on the shoulder. In this case, Castilleja was not parked on the shoulder. Rather, he was stopped in the right of way. Accordingly, summary judgment would not be proper on any of the grounds that depend on a finding that Williams was impaired.

### c.  Additional argument

The defendants also argue that summary judgment is appropriate because Castilleja reasonably attempted to restart his vehicle before beginning the process of placing the reflective triangles. (Doc. 35, p. 17-18). However, as described in the previous section regarding wantonness, there is a factual dispute as to the actions Castilleja took after his truck came to a stop that should be resolved by a jury. Accordingly, summary judgment would not be appropriate on this basis for the same reasons discussed in Section II(B)(1).

### 3.  Negligent maintenance claim

The defendants also argue that the plaintiffs cannot prove that the truck was negligently or wantonly maintained, nor can they prove that the repair done in Missouri caused the incident that led Castilleja to stop the truck.  (Doc. 35, p. 25). Under Alabama law, a negligent-maintenance claim premised on a brake failure first requires the plaintiff to show that "a defective braking system proximately caused the injuries suffered."  *Darnell v. Nance's Creek Farms*, 903 F.2d 1404, 1410 (11th Cir. 1990) (applying Alabama law.)  Once proximate cause is shown, a defendant may avoid liability and show lack of negligence by meeting a two-part test.  *Id*. at 1407 (interpreting and applying *City of Montgomery v. Bennett*, 487 So. 2d 942 (Ala. Civ. App. 1986)).  "First, the owner or operator must lack knowledge, either actual or constructive, of the defective condition.  Second, the owner or operator must exercise reasonable care in the inspection and maintenance of the motor vehicle's braking system."  *Id*.

The defendants first argue that the plaintiffs are unable to prove that the brake malfunction proximately caused the subject accident.  Rather, the defendants argue that Williams was the proximate cause because, they say, the truck was readily visible, and he failed to properly react to it.  Insofar as this claim is related to Williams's purported intoxication, it is due to be denied as explained above. Thus, the defendants' claim in this regard would be successful only if there is no dispute that Castilleja's truck was readily visible.  However, the Court finds that

there are disputed facts as to that contention.   While it is true that all of the witnesses testified that the weather was clear that day and that other vehicles passed the truck without incident, there is evidence that could suggest that Williams did not see the truck.

As noted, Raymond Baker testified that the decedents' vehicle was traveling behind a white box truck just before it swerved into the right lane and collided with Castilleja's truck.   When viewed in the light most favorable to the plaintiffs, a reasonable jury could conclude that the box truck obstructed Williams's view. Additionally, a jury could conclude that, had there been reflective triangles placed behind Castilleja's truck as required, Williams may have seen them and known that there was a hazard ahead.   Accordingly, summary judgment would not be proper on this basis.

Finally, the defendants contend that Crete lacked actual or constructive knowledge of the defective brakes.   (Doc. 35, p. 26-27).   According to the defendants, there is no evidence of a prior malfunction and "neither Crete nor Castilleja could have anticipated the valve failure."   While it is true that there is no evidence of a malfunction prior to the one necessitating the repair in Missouri, the Court is not persuaded that there is no genuine issue of material fact as to Crete's or Castilleja's knowledge of a defect.   As noted, Castilleja took the truck to a repair shop in Missouri, and a mechanic replaced a faulty fitting, albeit not with the

proper part.  The technician even noted that he told Castilleja to have the proper fitting placed as soon as possible.  That evidence, when viewed in the light most favorable to the plaintiffs, could support an inference that Castilleja had knowledge of a defective condition.  The fact that Castilleja had properly maintained his truck up to that point and had informed Crete of the same is of no consequence.  Based on all of the evidence in the record, a reasonable jury could determine that Castilleja's decision to drive the truck in the condition it was in after the repair in Missouri was negligent.

Further, there appears to be a dispute as to whether the repair that was done in Missouri was the cause of the depressurization that caused Castilleja to stop his truck four days later.  The defendants point out that the state trooper who examined the truck after the accident allowed it to remain in service and that he did not issue a citation for the temporary part that had been installed.  The defendants also contend that the plaintiffs' expert's testimony is not supported by the post-accident investigation.  Those disputes, however, will have to be resolved by a jury and preclude summary judgment on this issue.

## IV.    Claims against Crete

As noted, the plaintiffs brought both their claim against both Castilleja and Crete under the theory that Castilleja's acts were to be imputed to Crete because, the plaintiffs said, Crete "was the owner of and had the right of control over and

use of, the" truck driven by Castilleja.  (Doc. 1, p. 4).  The plaintiffs also alleged that Crete was responsible under theories of *respondeat superior*, agency, [and] employer-employee relationship."  (Doc. 1, p. 5).  In their motion for summary judgment, the defendants did not directly challenge any of these theories nor did they allege that summary judgment should be granted in favor of Crete on any independent basis.  Accordingly, all of the claims that will proceed against Castilleja will proceed against Crete as well.

## V.    Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 35) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** insofar as the complaint alleges that the defendants acted wantonly regarding Castilleja's decision to operate the truck with the repaired hose.  *See* Section II(B)(1).  In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** October 9, 2020.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

23